**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **DELIRIS MONTANEZ BERRIOS**, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **EP-22-CV-00139-DCG** |
| **TROY A. MILLER**, *Acting Commissioner* | § | |
| *of the U.S. Customs and Border Protection*, | § | |
| | § | |
| *Defendant.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Troy A. Miller,[1] in his official capacity as the Acting Commissioner of the

U.S. Customs and Border Protection ("CBP"), has moved to dismiss *pro se* Plaintiff Deliris

Montanez Berrios's claims under Federal Rule of Civil Procedure 12(b)(6).  Mot., ECF No. 25,

at 1–12; Reply, ECF No. 31, at 1–10;[2] FED. R. CIV. P. 12(b)(6) (allowing dismissal for "failure to

state a claim upon which relief can be granted").  Plaintiff opposes Defendant's Motion.[3]  Resp.,

ECF No. 29, at 1–5.  The Court **GRANTS** Defendant's Motion but **PROVIDES** Plaintiff

**LEAVE TO AMEND** her Complaint.

---

[1] Plaintiff sued former Commissioner of the U.S. Customs and Border Protection Chris Magnus. *See* Compl., ECF No. 18, at 1.  Under Federal Rule of Civil Procedure 20(d), the Court automatically substituted Troy A. Miller as the proper defendant.  FED. R. CIV. P. 20(d).

[2] Page citations in this Memorandum Opinion and Order refer to page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[3] In her Response, Plaintiff raises several new claims that she did not mention in her Complaint. *Compare* Compl. at 1–4 (raising discrimination and retaliation claims), *with* Resp. at 1–5 (raising a personal injury claim and a constitutional challenge to the structure of the Equal Employment Opportunity Commission).  The Court construes the fact that Plaintiff raised new claims in her Response as a request to amend her Complaint.  *See, e.g.*, *King v. Life Sch.*, 809 F. Supp. 2d 572, 581 (N.D. Tex. 2011) (citing *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992)) (doing same).  The Court will provide Plaintiff leave to amend her Complaint in response to this Memorandum Opinion and Order. *See infra* Section III.  When, and if, she does so, she may add new claims so long as doing so comports with applicable law.

- 1 -

## I.   BACKGROUND

### A.  Factual Background

Plaintiff is a Puerto Rican, Hispanic female who suffers from chronic post-traumatic stress disorder ("PTSD"), anxiety, and depression, and who worked for CBP from 2000 until sometime between 2019–2021.[4]  Plaintiff alleges that Defendant discriminated against her based on her race, sex, national origin, and disability, and that Defendant retaliated against her for engaging in legally protected employment activity.[5]  Plaintiff specifically says Defendant's alleged acts violated:

> (1) Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17;
>
> (2) The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102–12213; and
>
> (3) The Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*[6]

Before addressing Plaintiff's specific factual allegations, the Court will explain where it is getting the alleged facts.  Plaintiff provided very little information in her Complaint,[7] instead opting to attach numerous documents to it, some of which are relevant, and others not.  To support her claims, Plaintiff attached the following documents to her Complaint:

> (1) The State Bar of Texas's judgment disbarring an attorney Plaintiff hired to represent her on the claims she now asserts *pro se* before this Court.  J. Disbarment, Compl. Ex. 1, ECF No. 18, at 5–11.

---

[4] Compl. at 2–3; ALJ Decision, Mot. Ex. 1, ECF No. 25-1, at 3.  Plaintiff does not allege when she stopped working for CBP.  Based on the documents before the Court, it appears Plaintiff likely stopped working for CBP between 2019–2021.  *Compare* ALJ Decision at 3, 31 (decision signed in August 2019; suggesting Plaintiff was employed by CBP at the time of the decision), *with* EEOC Decision, Compl. Ex. 6, ECF No. 18, at 31, 36 (decision signed in August 2021; suggesting Plaintiff was no longer employed by CBP at the time of the decision).

[5] Compl. at 1–4.

[6] *Id.*

[7] *See id.*

(2) A screen capture from the State Bar of Texas's website showing that Plaintiff's former attorney, Robert "Chris" Pittard, is no longer eligible to practice in Texas.  Tex. Bar Website, Compl. Ex. 2, ECF No. 18, at 12–14.

(3) A letter Plaintiff sent Mr. Pittard regarding her attorney-client relationship with him and the State Bar of Texas's judgment of disbarment.  Pl.'s Letter re: Former Attorney, Compl. Ex. 3, ECF No. 18, at 15–16.

(4) Plaintiff's Proposed Witness List for her Equal Opportunity Employment Commission ("EEOC") proceedings.  EEOC Proposed Witness List, Compl. Ex. 4, ECF No. 18, at 17–18.

(5) Plaintiff's Motion for Reconsideration before the EEOC.  EEOC Mot. Recons., Compl. Ex. 5, ECF No. 18, at 19–30.

(6) The EEOC's decision affirming the Administrative Law Judge's ("ALJ") decision to deny her administrative claims.  EEOC Decision, Compl. Ex. 6, ECF No. 18, at 31–37.

(7) The EEOC's decision denying Plaintiff's Motion for Reconsideration before the EEOC.  EEOC Recons. Decision, Compl. Ex. 7, ECF No. 18, at 38–41.

Besides the documents that Plaintiff attached to her Complaint, Defendant attached to its Motion to Dismiss the ALJ's written decision denying Plaintiff's administrative claims.[8]  ALJ Decision, Mot. Ex. 1, ECF No. 25-1.  The Court has looked to each of these documents for factual information relevant to Plaintiff's claims and allegations.[9]

---

[8] Under a Rule 12(b)(6) analysis, courts generally consider only facts the plaintiff alleges.  *E.g.*, *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).  But there are some exceptions that allow courts to consider information the plaintiff does not allege, including information that is subject to judicial notice, like matters of public record.  *See, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Wright v. Arlington Indep. Sch. Dist.*, No. 4:29-cv-00278-P, 2019 WL 6311163, at *2 (N.D. Tex. Nov. 25, 2019).  Administrative records—like those from the EEOC—are matters subject to judicial notice; this Court takes judicial notice of the ALJ's written decision in this case.  *E.g.*, *Prewitt v. Cont'l Auto.*, 927 F. Supp. 2d 435, 447 (W.D. Tex. 2013) ("[A] court may take judicial notice of EEOC documents as a matter of public record when deciding a Rule 12(b)(6) motion." (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994))).

[9] Title VII gives plaintiffs the right to a *de novo* consideration of their claims in federal court.  *E.g.* *Chandler v. Roudebush*, 425 U.S. 840, 844–45, 864 (1976).  The Court, therefore, looks to the ALJ and EEOC written decisions in this case to determine alleged facts, not to defer to legal determinations.

Turn to Plaintiff's alleged facts.  In February 2016, Plaintiff alleges that four work-related events took place that support her legal claims:

(1) Mr. Jose Tiscareno, one of Plaintiff's Supervisor Watch Commanders, "questioned [Plaintiff]" in an aggressive manner—by "speaking loudly to her" and "follow[ing] her out of the building"—about completing her required online courses even though a different supervisor had already spoken to her about them;[10]

(2) Another of Plaintiff's supervisors, Border Patrol Agent ("BPA") Supervisor Jimmie Scott, "issued [Plaintiff] a memorandum alleging she engaged in unprofessional conduct" when she and a male coworker got in "a verbal altercation" and warning her that future altercations may result in disciplinary action;[11]

(3) Yet another supervisor, BPA Supervisor Juan Saenz, Jr., "gave [Plaintiff] a hard time;"[12] and

(4) CBP assigned Plaintiff "to cover two Areas of Responsibilities (AORs) by herself" on February 17, 2016.[13]

Then, three times between August and September 2016, CBP allegedly denied Plaintiff's "requests for official time to participate in [equal employment opportunity] activities"—specifically, time to work on her administrative complaints before the EEOC.[14]  Finally, in May 2017, Mr. Martin Morales, Plaintiff's Watch Commander, "issued a Performance Counseling" memorandum to Plaintiff "for not signing a policy roster."[15]  Plaintiff alleges that each of these

---

[10] EEOC Mot. Recons. at 20–21; ALJ Decision at 3–4.

[11] EEOC Mot. Recons. at 20, 22; ALJ Decision at 4–6.

[12] EEOC Mot. Recons. at 20; ALJ Decision at 7.

[13] EEOC Mot. Recons. at 20; ALJ Decision at 7–8.

[14] EEOC Mot. Recons. at 21; ALJ Decision at 8–9.

[15] EEOC Mot. Recons. at 21, 23; ALJ Decision at 9–12.

events "interfered with [her] ability to perform her job" and "negatively impacted her work environment."[16]

Plaintiff further alleges that when her supervisors questioned her about completing required courses and issued disciplinary memoranda to her, those same supervisors did not take the same actions against her similarly situated male coworkers.[17]

## B. Procedural Background

In April 2016, Plaintiff filed an administrative complaint with the EEOC.[18]  In that complaint, Plaintiff alleged that the February 2016 events discussed above constituted discrimination, and subjected her to a hostile work environment, on the basis of race, national origin, and sex.[19]  Plaintiff later filed a second EEOC complaint, adding the remaining allegations discussed above, which the EEOC consolidated with her original complaint.[20]  The ALJ held a hearing on Plaintiff's administrative claims in April 2018 and issued a written decision in August 2019 denying Plaintiff's claims.[21]  Plaintiff appealed and the EEOC affirmed

---

[16] EEOC Mot. Recons. at 27–28.

[17] *Id.* at 20–23.

[18] EEOC Decision at 31.

[19] *Id.* at 31–32.

[20] *Id.* at 32; EEOC Recons. Decision at 38–39.

[21] EEOC Decision at 32; *see also* ALJ Decision 1–31.

the ALJ's decision.[22]  Plaintiff then moved for reconsideration,[23] which the EEOC denied on

January 26, 2022.[24]  Plaintiff filed the instant case on April 26, 2022.[25]

After litigation over this Court's decision to deny Plaintiff leave to proceed *in forma*

*pauperis*,[26] Plaintiff paid the filing fee and filed her Complaint in December 2022.[27]  Defendant

now moves to dismiss all of Plaintiff's claims.[28]

## II.    DISCUSSION

### A.  Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, the Court "accept[s] as true all well-pleaded facts and

construe[s] the complaint in the light most favorable to the plaintiff."  *Norsworthy v. Hous.*

*Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).  The Court, however, does "not accept as

true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Id.* (cleaned

up).  Although a plaintiff asserting a discrimination claim does "not have to submit evidence to

establish a prima facie case of discrimination" at the motion to dismiss phase, *Chhim v. Univ. of*

*Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam), she must "'plead sufficient facts

---

[22] EEOC Decision at 31–35.

[23] EEOC Mot. Recons. at 19–30.

[24] EEOC Recons. Decision at 38–41; *see also* Compl. at 2.

[25] Pl.'s In Forma Pauperis Mot., ECF No. 1.  Plaintiff timely filed her case in federal court.  She had 90 days to do so after receiving the EEOC's right to sue letter, *e.g.*, *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002), and 90 days after January 26, 2022 was April 26, 2022.

[26] *See, e.g.*, Magis. Ct. Order Denying IFP, ECF No. 4; Pl.'s Notice Appeal 5th Cir., ECF No. 6; Notice Returned Appeal, ECF No. 8; Dist. Ct. Mem. Op. Affirming Order Denying IFP, ECF No. 11.

[27] *See* Compl.

[28] *See generally* Mot.; Reply.

on *all of the ultimate elements*' of her claim," *Norsworthy*, 70 F.4th at 336 (quoting *Chhim*, 836 F.3d at 470).

The Court must consider, among other things, "the complaint [and] any documents attached to the complaint."[29]  *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  When, as here, a plaintiff attaches documents from her EEOC proceedings to her complaint, a court may consider them.[30]  *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (holding that the district court "erred in failing to consider information contained in [the plaintiff's] filing, a document referenced in the complaint and attached thereto").[31]

Finally, the Court construes Plaintiff's *pro se* pleading liberally, *e.g.*, *Jeanty v. Big Bubba's Bail Bonds*, 72 F.4th 116, 119 (5th Cir. 2023), but also recognizes that Plaintiff must still comply with the Federal Rules of Civil Procedure, *see, e.g.*, *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).

---

[29] A court must also consider "documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Funk*, 631 F.3d at 783 ("When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Tellabs, Inc. v. Maker Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))).

[30] Though Federal Rule of Civil Procedure 12(d) says that if a court considers "matters outside the pleadings" on a Rule 12(b)(6) motion, the Court must treat it as a motion for summary judgment, FED. R. CIV. P. 12(d), that does not apply when a court considers EEOC documents a plaintiff attaches to her complaint, *see, e.g.*, *Bustos v. United Parcel Serv., Inc.*, No. CV H-19-2979, 2020 WL 2529384, at *3 (S.D. Tex. Apr. 29, 2020), *report and recommendation adopted*, No. CV H-19-2979, 2020 WL 2528540 (S.D. Tex. May 18, 2020); *Tucker v. Waffle House, Inc.*, No. CIV.A. 12-2446, 2013 WL 1588067, at *2 (E.D. La. Apr. 11, 2013); *Wilson v. Lockheed Martin Corp.*, No. CIV. A. 03-2276, 2003 WL 22384933, at *2 (E.D. La. Oct. 15, 2003).

As noted above, the Court looks to the documents related to Plaintiff's EEOC proceedings for their factual content, not for their legal determinations.  *See supra* note 9.

[31] *See also Williams v. Chu*, 641 F. Supp. 2d 31, 34–35 (D.D.C. 2009) (considering facts in the EEOC's written decision, which the plaintiff attached to the complaint); *supra* note 8.

**B. Analysis**

Plaintiff asserts disparate treatment, retaliation, hostile work environment, constructive discharge, and disability discrimination claims. The Court will address each in turn.

### 1. Disparate Treatment

There are two (not mutually exclusive) ways to prove discrimination: direct evidence and circumstantial evidence. *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 475 (5th Cir. 2015). Direct evidence of discrimination is typically "any statement or written document showing discriminatory motive on its face." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (quotation omitted). "A statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action is direct evidence of discrimination." *Id.* (cleaned up).

Circumstantial evidence of discrimination, by contrast, is any evidence that allows the trier of fact to *infer* discriminatory motive. *See, e.g.*, *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). When a plaintiff relies on circumstantial evidence to prove her discrimination claim, she must "plead sufficient facts on all of the *ultimate elements*" of her claim. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (quoting *Chhim*, 836 F.3d at 470). The ultimate elements of a discrimination claim are those a plaintiff must show to establish a prima facie case of discrimination under *McDonnell Douglas*'s[32] analytical burden-shifting framework. *Hassen v. Ruston La. Hosp. Co., LLC*, 932 F.3d 353, 356 (5th Cir. 2019); *Chhim*, 836 F.3d at 470–71. A plaintiff does not, however, need to do anything more than plead a plausible claim for relief; strictly speaking, the *McDonnell Douglas*

---

[32] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

framework is an evidentiary standard that's ultimately inapplicable at the motion to dismiss stage. *Cicalese*, 924 F.3d at 766.

Because Plaintiff has not pleaded any direct evidence of discrimination, the Court will turn to the prima facie elements of Plaintiff's disparate treatment claim. Plaintiff must plausibly allege:

(1) She's a member of a protected group;[33]

(2) She was qualified for the position at issue;[34]

(3) The employer fired her or took some other adverse employment action; and

(4) The employer replaced her with someone outside the protected group or treated her less favorably than other similarly-situated employees outside the protected group.[35]

*Hassen*, 932 F.3d at 356. For Plaintiff's disparate treatment claim, at the motion to dismiss stage, the question boils down to asking whether Plaintiff has plausibly alleged "(1) an adverse employment action, (2) taken against [her] *because of* her protected status." *Cicalese*, 924 F.3d at 767 (cleaned up). These elements guide the Court's analysis. *See Chhim*, 836 F.3d at 470–71.

Defendant argues that Plaintiff has failed to plausibly allege CBP took an adverse employment action against her. Mot. at 6–8; Reply at 3–4. Plaintiff does not address this argument in her Response. *See* Resp. at 1–5.

---

[33] Defendant doesn't dispute that Plaintiff has adequately pleaded this element.

[34] Defendant doesn't dispute that Plaintiff has adequately pleaded this element.

[35] Only once a plaintiff establishes these elements does the burden shift to the defendant. *Hassen*, 932 F.3d at 356. When the burden shifts to the defendant, the defendant "must articulate a legitimate non-discriminatory reason for the adverse employment action." *Id.* (quotation omitted). "If the defendant does, the burden shifts back to the plaintiff, who must offer evidence that the employer's reason was mere pretext." *Id.* Because this case is at the motion to dismiss stage, this portion of the *McDonnell Douglas* burden-shifting framework is irrelevant. *See Cicalese*, 924 F.3d at 766.

### a.  Adverse Employment Action

Though not exclusively, adverse employment actions are usually "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1045 (5th Cir. 2023) (quotation omitted).  "As a rule of thumb, if the [employer's] decision does not affect job duties, compensation, or benefits, then it is not an adverse employment action."  *Id.* (quotation omitted).

Recall that Plaintiff alleges that her employer "questioned her," "gave her a hard time," wrote two disciplinary memoranda against her, increased her work responsibilities on a single day, and denied some of her "requests for official time to participate in [equal employment opportunity] activities."[36]  None of Plaintiff's allegations plausibly show that CBP took an adverse employment action against her.

First, Plaintiff's allegations that her supervisors "questioned her" and "gave her a hard time" do not plausibly show that CBP took an adverse employment action against her.  At best, the Court can construe these allegations as formal, verbal reprimands.  But even then, "absent [allegations] that [verbal reprimands] are 'anything more than mere criticisms,'" they are not adverse employment actions.  *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 476 (5th Cir. 2004) (per curiam) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998)).[37]  Plaintiff does not allege any facts that plausibly show that her supervisors' verbal reprimands rise to the level of an adverse employment action.

---

[36] EEOC Mot. Recons. at 20–22.

[37] *See also, e.g.*, *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 428–29 (4th Cir. 2015) (verbal reprimand not an adverse employment action); *Holcomb v. Berryhill*, No. A-08-CA-681-JRN, 2009 WL 10699948, at *3 (W.D. Tex. July 17, 2009) ("[V]erbal reprimands do not constitute adverse employment actions." (cleaned up)).

Second, while a *written* reprimand can sometimes be an adverse employment action, Plaintiff's allegations that two supervisors wrote disciplinary memoranda against her fall short of plausibly alleging CBP took an adverse employment action against her.  Not just any written reprimand constitutes an adverse employment action.  A written reprimand may be an adverse employment action when, for example, the employer makes it public or goes beyond what could reasonably be characterized as a poor performance review.  *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000).[38]  Assuming that the disciplinary memoranda CBP issued against Plaintiff are reprimands, Plaintiff still does not allege any facts that would suggest those memoranda were public, went beyond a poor performance review, or otherwise constituted an actionable employment injury.[39]  Plaintiff, therefore, has not plausibly alleged the disciplinary memoranda CBP issued to her are adverse employment actions.

Third, Plaintiff's allegation that CBP assigned her to cover two Areas of Responsibility by herself similarly does not suffice to plausibly show that CBP took an adverse employment action against her.  Absent other facts, "[i]mposing a higher workload than that given to other employees is not an adverse employment action under [T]itle VII."  *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (citing *Benningfield*, 157 F.3d at 376–77).  Indeed, a work "reassignment that requires additional tasks" is not an adverse employment action "if it is not accompanied by any other change in the employee's status."  *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347 (5th Cir. 2016) (per curiam) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)).  Plaintiff has not alleged that CBP altered her employment status.  Nor has Plaintiff alleged any facts that plausibly demonstrate that CBP assigning her two AORs was "so

---

[38] *See also Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (suggesting that a poor performance review may not be, standing alone, an adverse employment action).

[39] *See generally* Compl. at 1–41; ALJ Decision at 1–31.

significant and material that it rises to the level of an adverse employment action." *See Welsh*, 941 F.3d at 824.  Plaintiff, therefore, has not plausibly alleged that her assignment to cover two AORs by herself constituted an adverse employment action.

Fourth, that CBP allegedly denied *some* of Plaintiff's requests for official time to work on her EEOC administrative complaints is not plausibly, under the facts Plaintiff alleges, an adverse employment action.[40]  *Cf. Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 543–45 (D. Md. 2015) (concluding same in summary judgment context); *Morales v. Gotbaum*, 42 F. Supp. 3d 175, 204–05 (D.D.C. 2014) (similar but as to a retaliation claim) *Hernandez v. Napolitano*, EP-10-CV-480-KC, 2012 WL 641033, at *7 (W.D. Tex. Feb. 27, 2012) ("DHS's denial of two leave requests also does not qualify as an adverse employment action.").  In fact, Plaintiff alleges (through the EEOC's written decision attached to her Complaint) that CBP granted her over 30 hours of official time to participate in protected activities.[41]  These allegations do not plausibly show, for example, that CBP denied Plaintiff "the right in general to take leave." *Cf. Hernandez*, 2012 WL 641033, at *7.

In the end, Plaintiff has not alleged that CBP made an employment decision that was "so significant and material that it rises to the level of an adverse employment action." *Rahman*, 56 F.4th at 1045–46 (quoting *Thompson v. City of Waco*, 764 F.3d 500, 504 (5th Cir. 2014)). Plaintiff does not allege, for example, that CBP fired her, discharged her, or altered her

---

[40] Based on Plaintiffs own allegations—or, more specifically, the materials she attached to her Complaint—CBP granted Plaintiff around 36 total hours of official time to work on her complaints. EEOC Decision at 34–35.  Construing Plaintiff's allegations in the light most favorable to her, the Court cannot say that Plaintiff alleged that CBP denied her all her requests for official time, or even a substantial number of her requests.  The Court, however, does credit Plaintiff's allegation that CBP denied *some* of her requests for official time.  As the Court explains, however, those allegations are insufficient to plausibly show that CBP took an adverse employment allegation against Plaintiff.

[41] EEOC Decision at 34–35; *see also* ALJ Decision at 29.

compensation—all prototypical adverse employment actions.  Nor does Plaintiff allege that CBP altered her job responsibilities in a significant or material manner, which could (but does not necessarily) constitute an adverse employment action.  *See Welsh*, 941 F.3d at 824.  Plaintiff thus falls short of plausibly alleging CBP took an adverse action against her in violation of Title VII, so the Court dismisses this claim.

### b.  Connection to Plaintiff's Protected Status

While Plaintiff's failure to plead an adverse employment action alone suffices to dismiss her claim, she has also failed to allege any facts whatsoever suggesting that CBP took an employment action (adverse or not) against her *because of* Plaintiff's protected status.  That is "the 'ultimate question' in a Title VII" claim—"whether a defendant took the adverse employment action against a plaintiff *because of* her protected status." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (quotation omitted).  The absence of any such allegations is an independent reason the Court concludes that Plaintiff failed to state a plausible disparate treatment claim.  *See, e.g.*, *Sanchez v. Bexar County*, No. 5-21-CV-00018-OLG-RBF, 2022 WL 209286, at *4–5 (W.D. Tex. Jan. 24, 2022) (concluding same); *Chhim v. Univ. of Tex. at Austin*, No. A-15-CV-919 LY, 2016 WL 154142, at *4 (W.D. Tex. Jan. 11, 2016), *aff'd*, 836 F.3d 467 (5th Cir. 2016) (same).

### 2.  *Retaliation*

The Court turns next to Plaintiff's retaliation claim.  To validly plead a Title VII retaliation claim using circumstantial evidence, a plaintiff must allege facts going to all of the ultimate elements of a prima facie case of retaliation:

(1) the plaintiff "engaged in activity protected by Title VII;"[42]

_____

[42] "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotation

(2) "the employer took an adverse employment action against" her; and

(3) "a causal connection exists between the protected activity and the adverse employment action."[43]

*E.g.*, *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017).

Plaintiff claims that CBP retaliated against her because of her prior equal employment opportunity activity—her EEOC complaints.[44]  She alleges that one of her supervisors "admitted he had an animus towards" Plaintiff because she had filed complaints before, brought grievances, and accused coworkers of bad behavior.[45]  Defendant argues that Plaintiff failed to allege that CBP took an adverse employment action against her, and even if she did, Plaintiff did not allege any causal connection between protected activity and CBP's alleged adverse employment actions.  Mot. at 8–9; Reply at 6–7.  Plaintiff does not address these arguments in her Response.

### a.  Adverse Employment Action

Unlike in Title VII discrimination cases, adverse employment actions in Title VII retaliation cases are "not limited to 'workplace-related or employment-related retaliatory acts and harm.'"  *Porter v. Houma Terrebone Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th

---

omitted).  "In other words, to qualify as a protected activity, the employee's conduct must have 'opposed' the employer's practice and that opposed practice must have been unlawful."  *Cf. Scott v. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (considering retaliation claim under 42 U.S.C. § 1981, which uses "the same rubric of analysis as Title VII" retaliation claims (cleaned up)).

[43] As with Title VII employment discrimination claims, these elements of the prima facie test are the first step in a burden-shifting analysis.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).  Only the prima facie elements are relevant to the Court's analysis at the motion to dismiss stage because, as in Title VII employment discrimination claims, *see supra* Section II.B.1, the *McDonnell Douglas* framework is an evidentiary standard that is ultimately inapplicable at the motion to dismiss stage, except to the extent it guides a court's analysis of whether a plaintiff alleged facts sufficient to establish a plausible claim for relief on each of the ultimate elements, *cf. Chhim*, 836 F.3d at 470.

[44] *See* Compl. at 3; EEOC Mot. Recons. at 25–26.

[45] EEOC Mot. Recons. at 25–26.

Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).  Rather, "[t]he key question is whether the challenged action is 'materially adverse' in that it is 'harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"[46]  *Id.* (quoting *Burlington N.*, 548 U.S. at 57, 69).  This is a context-dependent, objective standard.  *Id.* at 945–46.

Begin again with Plaintiff's allegations that her supervisors questioned her and gave her a hard time.  Assume, for argument's sake, that Plaintiff is asserting that when her supervisors questioned her, they did so publicly.  When an employer makes public statements that can be fairly equated to a negative reference to a future employer, those public statements can rise to the level of an adverse employment action.  *Teague v. Williamson County*, 1:18-CV-1089-RP, 2020 WL 2542869, at *12–13 (W.D. Tex. May 19, 2020) (collecting cases).  But Plaintiff makes no such allegation.

Plaintiff's allegations instead sound like run-of-the-mill employment grievances.  Being given a "hard time" and being questioned by one's employer, even if a bit aggressively, are not adverse employment actions, at least not standing alone.  *Cf. Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) ("[A]s a matter of law," things like "personal items [] taken from" the plaintiff's desk, locks being taken off the office door, and being "chastised by superiors and ostracized by co-workers" are not adverse employment actions.).

The disciplinary memoranda Plaintiff's supervisors issued to her also do not plausibly rise to the level of an adverse employment action.  It's true that, in certain contexts, a written reprimand may be enough to plausibly infer an adverse employment action.  *See, e.g.*, *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 586 (S.D. Tex. 2015) (citing *Hernandez v. Sikorsky*

---

[46] "The reasonable employee is the average person in similarly situated circumstances." *Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015).

*Support Servs., Inc.*, 495 F. App'x 435, 438 (5th Cir. 2012) (per curiam)).  But without allegations that the written reprimand resulted in serious employment consequences that could have dissuaded the reasonable employee from making or supporting a charge of discrimination, an allegation of a written reprimand alone does not constitute a plausible adverse employment action.  *See id.*; *see also Kincaid v. United Sch. Dist. No. 500*, 572 F. Supp. 3d 1081, 1088–89 (D. Kan. 2021) (concluding that email reprimands and negative performance review were not alone sufficient to plausibly infer an adverse employment action).  So, for example, had Plaintiff alleged that CBP's disciplinary memoranda were made public such that her co-workers or her future employers could see them, that may (or may not) have supported a plausible retaliation claim.  *Cf. Washington v. City of Austin*, No. A-15-CA-222-SS, 2015 WL 12990135, at *5 (W.D. Tex. Oct. 7, 2015) (explaining that a public memorandum that did not mention plaintiff was not sufficient to state a plausible adverse employment action, even if it were "unpleasant or unfair" to plaintiff.  As they stand, however, Plaintiff's allegations that CBP's disciplinary memoranda constitute adverse employment actions do not clear the plausibility bar.

So too for Plaintiff's allegation that her supervisors required her to cover two Areas of Responsibility.  Sometimes, an increased workload can be an adverse employment action.  But when, as here, a plaintiff alleges no context—such as any change in "her job title, grade, hours, salary, or benefits"—the Court cannot plausibly infer an adverse employment action.  *Stewart*, 586 F.3d at 332.[47]  Neither did Plaintiff allege that having to cover two AORs resulted in "a diminution of prestige or change in standing among her co-workers," *see id.*, or was "a disproportionately heavy workload that affected her ability to perform her responsibilities,"

---

[47] *Cf. Garvin v. Sw. Corr., LLC*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) (concluding, in the context of a retaliation claim, that the plaintiff pleaded an adverse employment action because he alleged he was "demoted" and the demotion came "with an associated reduction in pay and loss of seniority").

*Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, --- F. Supp. 3d ----, ----, 2023 WL 2691622, at *22 (S.D.N.Y. Mar. 29, 2023).  The point is, Plaintiff's allegations lack any context that would allow the Court to plausibly infer that the actions CBP took against Plaintiff, together or standing alone, were "materially adverse" such that they were "harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Porter*, 810 F.3d at 945–46 (quotation omitted).

The Court also cannot plausibly infer an adverse employment action from Plaintiff's allegations that CBP denied some of her requests for leave to work on her EEOC complaints.  As the Court has explained several times now, context matters.  *See id.* at 945–47.  The relevant context here is that CBP allegedly granted her over 30 hours of official time to participate in protected activity.[48]  Plaintiff did not allege, for example, that CBP denied all or even a significant number of her requests for official time, or that CBP continuously or arbitrarily denied her requests for official time.  Had she alleged context like that, she may have stated a plausible claim for relief.[49]  But she did not.  Because Plaintiff has not stated a plausible adverse employment action for her retaliation claim, the Court dismisses this claim.

One last point.  Plaintiff does allege that the circumstances of her employment "[f]orced her to retire."  Compl. at 3.  "Resignation is an adverse employment action actionable under Title VII 'only if the resignation qualifies as a constructive discharge.'"  *Lyons v. Baylor Univ.*, 6:17-CV-232-RP, 2019 WL 13253803, at *3 (W.D. Tex. Jan. 16, 2019) (quoting *Brown v. Kinney*

---

[48] EEOC Decision at 34–35; ALJ Decision at 29.

[49] *Cf. Pringle v. Wheeler*, 478 F. Supp. 3d 899, 913 (N.D. Cal. 2020) (explaining, in hostile work environment context, that a defendant's continuous and arbitrary denial of plaintiff's leave requests were "plausibly in retaliation" for "his multiple complaints"); *EEOC v. MVM, Inc.*, No. CV TDC-17-2864, 2018 WL 2197727, at *13 (D. Md. May 14, 2018) (explaining that, among other things, revocation of "previously approved leave request" supports a Title VII retaliation claim).

*Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).  As the Court will explain later on, Plaintiff does

not state a plausible constructive discharge claim.  *See infra* Section II.B.4.

### b.  Causal Connection with Adverse Employment Action

Even if Plaintiff had plausibly shown that CBP took an adverse employment action

against her, the Court would still dismiss her retaliation claim because she has alleged no facts

plausibly showing a causal connection between CBP's alleged adverse employment actions and

her participation in a protected activity (e.g., her EEOC complaints).  All Plaintiff alleges is that

she engaged in prior equal employment opportunity activity, and that CBP took adverse

employment actions against her because of that prior activity.[50]  She alleges nothing else about a

causal connection.  Plaintiff did not, for example, allege that CBP took an adverse employment

action against her "in the immediate aftermath of [CBP] becoming aware of [her] protected

activity," which may have supported "an inference of causation."  *Cabi v. Bos. Child.'s Hosp.*,

161 F. Supp. 3d 136, 156 (D. Mass. 2016); *see also Standley v. Rogers*, 202 F. Supp. 3d 655, 670

(W.D. Tex. 2016) ("Temporal proximity between an employer's knowledge of protected activity

and an adverse employment action can serve, in some circumstances, as indirect evidence of a

causal link.").  Plaintiff's allegations are thus conclusory and insufficient to get past the motion

to dismiss stage.  *See Norsworthy*, 70 F.4th at 336.

### 3.  *Hostile Work Environment*

Plaintiff claims that because her supervisors treated her different than her similarly

situated male coworkers, CBP created a hostile work environment.[51]  Defendant argues that

---

[50] *See* Compl. at 3; EEOC Decision at 31–32.

[51] EEOC Mot. Recons. at 24.

Plaintiff has not alleged facts sufficient to show that CBP created a hostile work environment. Mot. at 9–11; Reply at 7–8.  Plaintiff does not address these arguments in her Response.

"A hostile work environment claim is composed a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)).  To state a plausible hostile work environment claim under Title VII, a plaintiff must adequately allege:

(1) She is a member of a protected class;

(2) She suffered unwelcome harassment;

(3) The harassment was based on her membership in a protected class;

(4) The harassment affected a term, condition, or privilege of employment; and

(5) The employer knew or should have known about the harassment and failed to take prompt remedial action.

*See Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022) (cleaned up).

Plaintiff alleges that her superiors treated her differently than her male colleagues.  Sex discrimination can support a hostile work environment claim.  *E.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  Still, alleged sex discrimination is part of a holistic analysis. For discrimination to affect a term, condition, or privilege of employment—the fourth element of the hostile work environment test—it "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *West v. City of Houston*, 960 F.3d 736, 741–42 (5th Cir. 2020).  "The environment must be both objectively and subjectively offensive." *Wantou*, 23 F.4th at 433 (quotation omitted).  It must be "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Courts look to the totality of circumstances when assessing whether a work environment is objectively hostile. *Id.* Factors relevant to the totality of circumstances analysis include, but are not limited to:

(1) the frequency of the discriminatory conduct;

(2) its severity;

(3) whether it is physically threatening or humiliating, or a mere offensive utterance; and

(4) whether it unreasonably interferes with an employee's work performance.

*Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Plaintiff has not plausibly shown that CBP's alleged sex discrimination affected a term, condition, or privilege of her employment—a necessary condition for a valid hostile work environment claim. She alleges only three instances when different supervisors treated her differently than her male colleagues: (1) when a supervisor asked her, but not her male colleagues, about failure to complete required courses; (2) when a supervisor issued her a disciplinary memorandum for a verbal altercation with a coworker, but not the male coworker she got in the altercation with; and (3) when a supervisor issued a discplinary memorandum and verbally counseled her, but not her male colleagues, for not signing a roster.[52] Even assuming these allegations constitute sex discrimination, they are too infrequent and too isolated to plausibly establish a hostile work environment. *Cf. West*, 960 F.3d at 742 (concluding that several incidents of sex discrimination or harassment were not sufficiently "frequent or pervasive"). The Court dismisses this claim.

---

[52] *See, e.g.*, EEOC Mot. Recons. at 21–24.

### 4. *Constructive Discharge*

The Court also construes Plaintiff's *pro se* Complaint to assert a constructive discharge claim under Title VII.[53]  A constructive discharge claim requires a plaintiff to show that her "working conditions were so intolerable that a reasonable employee would feel compelled to resign."  *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (quotation omitted).

> To determine whether working conditions are sufficiently intolerable, [courts] consider whether the plaintiff suffered
>
> (1) demotion;
>
> (2) reduction in salary;
>
> (3) reduction in job responsibilities;
>
> (4) reassignment to menial or degrading work;
>
> (5) reassignment to work under a younger supervisor;
>
> (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or
>
> (7) offers of early retirement or continued employment on terms less favorable that the employee's former status.

*Id.*  Constructive discharge claims require an even "greater degree of harassment than that required by a hostile work environment claim."  *Id.*

Defendant argues that Plaintiff did not exhaust her administrative remedies for a constructive discharge claim because she did not include such a claim in her administrative complaints.  Mot. at 1 n.1, 9, 11–12; Reply at 1 n.1, 8–9.  Alternatively, Defendant argues that Plaintiff has not plausibly alleged a constructive discharge claim.  Mot. at 9.  Beyond stating that

---

[53] *See* Compl. at 3 (alleging she was "[f]orced to retire for lack of managerial and leadership support, victimi[z]ation, direct and indirect discrimination, orchestrated several Color of Law violations under Civil Rights"); *see also* Resp. at 5 ("[Plaintiff] indeed faced employment discrimination, retaliation, harassment, and hostile work environment *to the point of being forced to retire*." (emphasis added)).

her work environment "forced [her] to retire," Plaintiff does not address these arguments in her Response. *See* Resp. at 5.

### a. Exhaustion of Administrative Remedies

Before filing a Title VII claim in federal court, a plaintiff must exhaust her administrative remedies. *E.g.*, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976). The Title VII exhaustion requirement implicates a balancing act between "two competing Title VII policies." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). The first is that Congress designed Title VII, in part, with a strong remedial policy and for use by unrepresented parties. *See id.* at 788–89. The second is that Congress channeled employment discrimination claims to the EEOC, "in attempt to achieve non-judicial resolution of" such claims. *Id.* at 789.

Courts liberally construe a litigant's administrative complaint. *Id.* at 788–89; *see also Davenport v. Edward D. Jones & Co., LP*, 891 F.3d 162, 167–68 (5th Cir. 2018). But liberal construction has its limits. To strike a balance between the competing Title VII policies, courts interpret "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Pacheco*, 448 F.3d at 789 (cleaned up). To determine what claims can reasonably be expected to grow out of the charge of discrimination, courts engage in a "fact-intensive analysis" of a plaintiff's statement in her "administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

To begin with, for the Court to properly determine whether Plaintiff's putative constructive discharge claim reasonably falls within the scope of Plaintiff's administrative complaint, it would be best for the Court to have a copy of the administrative complaint.

Plaintiff did not provide one, and neither did Defendant.  Failure to provide a copy of the administrative complaint may be fatal for any claims a plaintiff appears to raise for the first time in a judicial proceeding.  *Cf. Longoria v. Via Metro. Transit*, No. SA-21-CV-01171-JKP, 2022 WL 1445396, at *6 (W.D. Tex. May 6, 2022).  For example, in *Longoria*, the plaintiff provided a copy of his administrative complaint but gave no "factual narrative of the basis of his EEOC Charge."  *Id.* at *6.  Because the court had no facts from the administrative complaint, it "ha[d] nothing from which to conclude he intended to allege anything other than that indicated by the checked boxes" on his administrative complaint.  *Id.*  Here, the Court has no information from Plaintiff's administrative complaints that would allow it to determine whether her complaints encompassed a constructive discharge claim.  But the Court need not decide whether Plaintiff's failure to provide a copy of her administrative complaints is fatal to her constructive discharge claim because her claim fails for another reason.

Plaintiff does not allege when she resigned from her employment with CBP.  If she resigned after she filed her administrative complaint, the EEOC could not reasonably have been expected to investigate a constructive discharge claim—Plaintiff would still have been employed during the EEOC's consideration of her complaint.  *See Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1081–82 (8th Cir. 2021); *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 n.2 (7th Cir. 2004).[54]  The Court has searched the administrative record that Plaintiff and Defendant provided in this case for some indication of when Plaintiff resigned, but all the record reveals is that Plaintiff had *not* resigned when she filed her administrative complaints.  In the ALJ's written decision, the ALJ noted that Plaintiff "*is* assigned to the El Paso Border Patrol Station in El Paso,

---

[54] *See also Mullinax v. Cook Sales, Inc.*, No. 2:16-CV-92-KS-MTP, 2016 WL 6839461, at *2 (S.D. Miss. Nov. 21, 2016) (concluding same).

TX."[55]  For this reason, Plaintiff has not plausibly alleged that she had resigned from her position

with CBP before filing her administrative complaints and thus the EEOC could not have

reasonably read her administrative complaint to raise a constructive discharge claim.  Plaintiff,

therefore, has not plausibly alleged that she exhausted her administrative remedies for her

constructive discharge claim, so the Court dismisses the claim.

### b.  Factual Allegations

What's more, Plaintiff has not plausibly alleged facts necessary to support a constructive

discharge claim.  Of the several factors courts assess, *see Newbury*, 991 F.3d at 677, Plaintiff

alleges facts that at best tend to show possible isolated instances of badgering, harassment, or

humiliation, *see* EEOC Mot. Recons. at 20.  These isolated instances, taken as true, do not

plausibly establish a constructive discharge claim.  *Cf. Hockman v. Westward Commc'ns, LLC*,

407 F.3d 317, 331 (5th Cir. 2004) ("Mere harassment, alone, is insufficient [to state a

constructive discharge claim]; rather, the plaintiff must [plausibly allege] aggravating factors to

justify departure." (quotation omitted)).[56]  Moreover, for none of supposed instances of

badgering, harassment, or humiliation does Plaintiff allege facts that tend to show they were

"calculated to encourage" Plaintiff's resignation.  *See Newbury*, 991 F.3d at 677.  For this

independent reason, the Court dismisses Plaintiff's constructive discharge claim.

---

[55] *See* ALJ Decision at 3 (emphasis added).

[56] *See also, e.g.*, *Judeh v. T-Mobile Cent. LLC*, No. CV 22-1130, 2023 WL 246843, at *5 (E.D. La. Jan. 18, 2023) (concluding that plaintiff's alleged "few, isolated instances of harassment, taken as true, [were] not 'so intolerable that a reasonable person in plaintiff's position would have felt compelled to resign'" (quoting *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 740 (E.D. La. May 5, 2019))); *Sanchez v. Bexar County*, No. 5-21-CV-00018-OLG-RBF, 2022 WL 209286, at *4 (W.D. Tex. Jan. 24, 2022) (concluding that plaintiff did not plausibly show that alleged instances of discriminatory animus were connected to plaintiff's constructive discharge, rather than being isolated instances).

### 5. *Disability Discrimination*

#### a. **The Americans with Disabilities Act**

Plaintiff purports to bring a disability discrimination claim under the ADA.  Compl. at 1;

*see also* 42 U.S.C. §§ 12102–12213.  She cannot do so.  Plaintiff was a federal government

employee and is suing CBP, her federal government employer.  The federal government is

exempt from the ADA's coverage.  *See* 42 U.S.C. § 12111(2), (5)(B) (excluding the United

States as an employer covered by the ADA); *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir.

2003) ("[T]he entire federal government is excluded from the coverage of the ADA.").  The

Court thus dismisses Plaintiff's ADA claim with prejudice.

#### b. **The Rehabilitation Act**

Plaintiff can, however, bring a disability discrimination claim against CBP "under either

§ 501 or § 504 of the Rehabilitation Act," *Pinkerton v. Spellings*, 529 F.3d 513, 515 (5th Cir.

2008), which she does, *see* Compl. at 1.  Her Rehabilitation Act claim is more-or-less the same

as an ADA claim because "[t]he [Rehabilitation Act] and the ADA are judged under the same

legal standards, and the same remedies are available under both Acts."  *Kemp v. Holder*, 610

F.3d 231, 234 (5th Cir. 2010).  To establish disability discrimination under the Rehabilitation

Act, a plaintiff must show:

> (1) [she] is disabled within the meaning of the ADA;
>
> (2) [she] is qualified and able to perform the essential functions of [her] job; and
>
> (3) [her] employer [took an adverse employment action against her] because of
>     [her] disability.

*Id.* at 235.

Defendant argues that Plaintiff failed to exhaust her administrative remedies for any

disability discrimination claim under the Rehabilitation Act.  Mot. at 12.  The Court agrees.

Plaintiff has alleged nothing that plausibly shows that she brought a disability discrimination claim against CBP in her administrative complaints.[57]  More importantly, under the facts alleged, nothing about Plaintiff's sex, race, and national origin discrimination claims, or her retaliation claim, could have reasonably led to the EEOC to expand the scope of its investigation to encompass a disability discrimination claim.  *Cf., e.g.*, *Huff v. DRE Mgmt., Inc.*, No. 3:12-CV-0414-B, 2012 WL 3072389, at *4–5 (N.D. Tex. July 30, 2012) (concluding "an EEOC investigation of disability discrimination could not reasonable have been expected to grow out of" sex and pregnancy discrimination charges and a retaliation charge).  Plaintiff fails to allege facts that plausibly show she raised a disability discrimination claim with the EEOC.  She therefore has not exhausted her administrative remedies for her disability discrimination claim.

What's more, Plaintiff alleges no facts whatsoever—beyond that she has a disability—that tend to show CBP took any action against her (adverse or otherwise) *because of* her alleged disabilities.  For her failure to plausibly allege she exhausted her administrative remedies and for the lack of a plausible Rehabilitation Act claim, the Court dismisses Plaintiff's Rehabilitation Act claim.

### III.  CONCLUSION

The Court **GRANTS** Defendant Troy A. Miller's "Motion to Dismiss" (ECF No. 25) and **DISMISSES** Plaintiff Deliris Montanez Berrios's disability discrimination claim under the Americans with Disabilities Act **WITH PREJUDICE**[58] and all other claims against Defendant

---

[57] The Court basis this determination off the administrative record provided by Plaintiff and Defendant.  As described earlier, neither Plaintiff nor Defendant provided a copy of Plaintiff's administrative complaints.  *See supra* Section II.B.4.a.

[58] Because Plaintiff cannot state a claim upon which relief can be granted under the Americans with Disabilities Act, *see supra* Section II.B.5.a, the Court dismisses this claim with prejudice, *see, e.g.*, *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) ("[A]n amendment is considered futile if it would fail to state a claim upon which relief could be granted."); *Stripling v. Jordan Prod. Co.*, 234 F.3d 863,

**WITHOUT PREJUDICE**.  Plaintiff has **LEAVE TO AMEND** her Complaint to cure

deficiencies described in this Memorandum Opinion and Order.  Plaintiff must file any amended

complaint by **September 5, 2023**.  If Plaintiff fails to amend her complaint by September 5,

2023, the Court **<u>will consider dismissing Plaintiff's case with prejudice</u>**.

       **So ORDERED and SIGNED this 15th day of August 2023.**

                           **DAVID C. GUADERRAMA**
                           **SENIOR U.S. DISTRICT JUDGE**

---

872–73 (5th Cir. 2000) (suggesting that dismissal with prejudice is appropriate when leave to amend would be futile).