## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **DELIRIS MONTANEZ BERRIOS**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | **EP-22-CV-00139-DCG-MAT** |
| | § | |
| **TROY A. MILLER,** | § | |
| **COMMISSIONER OF THE U.S.** | § | |
| **CUSTOMS AND BORDER** | § | |
| **PROTECTION** | § | |
| | | |
| *Defendant*. | | |

## ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL

Presently before the Court is *pro se* Plaintiff Deliris Montanez Berrios's ("Plaintiff") "Motion for Appointment of Counsel" ("Motion") (ECF No. 38), filed on September 5, 2023. The instant Motion is Plaintiff's second motion to appoint counsel filed in this case. On September 21, 2023, Senior United States District Judge David C. Guaderrama referred this motion to this Court for determination pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C to the Local Rules of the United States District Court for the Western District of Texas. (ECF No. 43). For the reasons that follow, the Court **DENIES** Plaintiff's Motion.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff brings this action for alleged employment discrimination. Plaintiff is a Puerto Rican, Hispanic female who suffers from chronic post-traumatic stress disorder ("PTSD"), anxiety, and depression. She has worked for Customs and Border Protection ("CBP") from May 15, 2000 until November 30, 2020.[1]  Mot. 2, ECF No. 38; Am. Compl. 6, ECF No. 39.  Plaintiff

---

[1] Plaintiff provides two different dates for when she stopped working for CBP.  In her Motion for Appointment of Counsel, ECF No. 38, Plaintiff alleges she stopped working on November 20, 2020.

alleges that Defendant discriminated against her based on her race, sex, national origin, and disability, and that Defendant retaliated against her for engaging in legally protected employment activity.  Compl. 1–5, ECF No. 1-1.  Plaintiff specifically says Defendant's alleged acts violated:

(1) Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17;

(2) The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102–12213; and

(3) The Rehabilitation Act, 29 U.S.C. §§ 791 et seq.

Plaintiff alleges that four work related events took place in February 2016, that support her legal claims:

(1) Mr. Jose Tiscareno, one of Plaintiff's Supervisor Watch Commanders, "questioned [Plaintiff]" in an aggressive manner—by "speaking loudly to her" and "follow[ing] her out of the building"—about completing her required online courses even though a different supervisor had already spoken to her about them;

(2) Another of Plaintiff's supervisors, Border Patrol Agent ("BPA") Supervisor Jimmie Scott, "issued [Plaintiff] a memorandum alleging she engaged in unprofessional conduct" when she and a male coworker got in "a verbal altercation" and warning her that future altercations may result in disciplinary action;

(3) Yet another supervisor, BPA Supervisor Juan Saenz, Jr., "gave [Plaintiff] a hard time;" and

(4) CBP assigned Plaintiff "to cover two Areas of Responsibilities (AORs) by herself" on February 17, 2016.

Compl. 20–22, ECF No. 1-1.  She alleges, three times between August and September 2016, CBP allegedly denied Plaintiff's "requests for official time to participate in [equal employment

---

However, in her Amended Complaint, ECF No. 39, Plaintiff alleges she resigned from her employment on November 30, 2020.

opportunity] activities"—specifically, time to work on her administrative complaints before the EEOC. *Id.* at 21. Finally, in May 2017, Mr. Martin Morales, Plaintiff's Watch Commander, "issued a Performance Counseling" memorandum to Plaintiff "for not signing a policy roster." *Id.* at 21, 23. Plaintiff alleges that each of these events "interfered with [her] ability to perform her job" and "negatively impacted her work environment." *Id.* at 27–28.

Plaintiff further alleges that when her supervisors questioned her about completing required courses and issued disciplinary memoranda to her, those same supervisors did not take the same actions against her similarly situated male coworkers. *Id.* at 20–23.

**B. Procedural Background**

In April 2016, Plaintiff filed an administrative complaint with the Equal Opportunity Employment Commission ("EEOC"). Compl. 31, ECF No. 1-1. In that complaint, Plaintiff alleged that the February 2016 events discussed above constituted discrimination, and subjected her to a hostile work environment on the basis of race, national origin, and sex. *Id.* at 31–32. Plaintiff later filed a second EEOC complaint, adding the remaining allegations discussed above, which the EEOC consolidated with her original complaint. *Id.* at 32; 38–39. The ALJ held a hearing on Plaintiff's administrative claims in April 2018 and issued a written decision in August 2019 denying Plaintiff's claims. *Id.* at 32. Plaintiff appealed and the EEOC affirmed the ALJ's decision. *Id.* at 31–35. Plaintiff then moved for reconsideration, *Id.* at 19–30, which the EEOC denied on January 26, 2022. Pl.'s Mot. to Proceed *Informa Pauperis* ("IFP") 2, ECF No. 1. Following, on January 26, 2022, the EEOC issued her a Notice of Right to Sue.

On April 26, 2022, Plaintiff, proceeding *pro se*, filed a Motion for Appointment of Counsel (the "First Motion for Counsel") (ECF No. 1-2). On June 21, 2022, the First Motion to Appoint Counsel was denied by this Court. Order Den. Pl.'s Mot. to Proceed IFP, ECF No. 4.

On November 3, 2022, Plaintiff moved for reconsideration, (ECF No. 14), which the District Court denied on November 22, 2022.   Order Den. Mot. for Recons., ECF No. 15.   On April 27, 2023, Defendant moved to dismiss all of Plaintiff's claims pursuant to Rule 12(b)(6), arguing Plaintiff's complaint failed to state a legally cognizable claim.   Mot. to Dismiss, ECF No. 25. The District Court, on August 15, 2023, dismissed with prejudice Plaintiff's disability discrimination claim under the Americans with Disability Act.   Mem. Op. & Order, ECF No. 35. Further the Court dismissed without prejudice all other claims against Defendant and granted Plaintiff leave to amend her Complaint to cure the deficiencies described in the Memorandum Opinion and Order.   *See Id.*   On September 5, 2023, Plaintiff filed the instant motion (ECF No. 28), and an amended complaint.   (ECF No. 39).

## II.   STANDARD

There is no automatic right to appointment of counsel in a civil case.   *Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166 (5th Cir. 1990) (affirming denial of counsel in a Title VII age discrimination action).   In a civil case, "a federal court has considerable discretion in determining whether to appoint counsel." *Salmon*, 911 F.2d at 1166.   In employment cases there are two different frameworks—one for actions under § 1983 and one for actions under Title VII—to determine whether appointment of counsel is appropriate under the 42 U.S.C. § 1983 and Title VII.   *Id.*

Under the Title VII framework, considerations for appointment of counsel include: (1) the probable success of the plaintiff's claims of discrimination; (2) the efforts by the plaintiff to retain counsel; and (3) the plaintiff's financial ability to retain counsel.   *Id.* (citing *Neal v. IAM Local Lodge 2386*, 722 F.2d 247, 250 (5th Cir. 1984)).   "No single factor is conclusive" in this inquiry.   *Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990).   Although courts must be

"sensitive and innovative" in confronting problems faced by *pro se* litigants in employment cases, they must consider that the plaintiff bears the burden of persuasion and that appointed counsel serve without compensation unless the suit is successful, and attorney's fees are awarded. *Lee v. U.S. Postal Serv.*, 882 F. Supp. 589, 593 (E.D. Tex. 1995) (citing 42 U.S.C. § 2000e-5(k)). "In general, then, the circumstances under which [an employment discrimination] litigant is entitled to an appointed counsel are limited." *Id.*

## III.   DISCUSSION

In the instant motion, Plaintiff's second motion requesting counsel, she once again moves for appointment of counsel under Title VII—specifically, 42 U.S.C. § 2000e-5(f)(1).  Mot. 1, ECF No. 38.

### A.   Plaintiff is not entitled to appointed counsel pursuant to Title VII

In its Order denying the First Motion to Appoint Counsel, the Court found that, at the time of the Order, Plaintiff was unlikely to succeed on the merits of her claim, had demonstrated an ability to present her own case, and had sufficient financial resources to continue her search for counsel.  *See* Order Den. 3–5, ECF No. 4.  The Court will address each factor considered for appointment of counsel under the Title VII framework: (1) the probable success of the claim, (2) the efforts by the plaintiff to retain counsel, and (3) the Plaintiff's financial ability.  *Salmon*, 911 F.2d at 1166 (citing *Neal*, 722 F.2d at 250).

#### 1.   *Plaintiff's Financial Ability to Retain Counsel*

The Court will begin its analysis under *Salmon* by examining the third factor first. Plaintiff need not make a substantial showing of poverty as is required when moving to proceed *in forma pauperis.  Lee v. U.S. Postal Service,* 882 F. Supp. 589, 593 (E.D. Tex. 1995) (citing *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982)).  She is only required to show that she

has insufficient assets to investigate and file her claim. *Id.* As discussed in this Court's Order Denying First Motion for Counsel, the Court deemed that Plaintiff is not indigent. Order Den. 4, ECF No. 4. Upon review of the record, including Plaintiff's financial affidavits, Plaintiff reports receiving approximately $88,000 per year ($3,700 per month from a pension and $3,700 per month from disability), and having savings account(s) of $25,000. *See* Pl.'s Mot. 1-2, ECF No. 1. Although Plaintiff reports notable monthly expenses which exceed her monthly income, as well as the $25,000 savings account that is "diminishing rapidly," Plaintiff has failed to address how much money remains in her savings account(s). *See Br.,* ECF No. 6. Given Plaintiff's discretionary expenses (ECF No. 1) and money available in her checking or savings account, Plaintiff has not shown that she lacks financial ability to retain counsel. *See, e.g.*, *Gonzalez*, 907 F.3d at 580 (holding Plaintiff was "under no constraint which would inhibit his opportunity to investigate the cause" where plaintiff only had "modest" savings); *Salmon*, 911 F.2d at 1166–67 (denying appointment of counsel even when the plaintiff proved "his indigency"); *Lee*, 882 F. Supp. at 593–94 (denying appointment of counsel where plaintiff had steady salary and owned multiple vehicles, but had "no outstanding debts"). Additionally, because Plaintiff was able to pay the filing fee (ECF No. 17), the first factor weighs against appointing counsel. *See Tanzy v. Wolf*, No. 3:20-CV-3161-X-BH, 2020 WL 11627346, at *1 (N.D. Tex. Nov. 13, 2020) (holding plaintiff did not meet her burden of establishing that she had insufficient assets to investigate and file her claim based on plaintiff's payment of the filling fee.)

   2. *Efforts to Obtain Counsel*

   To meet the second factor, Plaintiff must show she has been "reasonably diligent" in her efforts to retain counsel under the circumstances. *Chancey v. Napolitano*, No. EP-08-CA-260-FM, 2009 WL 10699348, at *1 (W.D. Tex. Apr. 1, 2009) (citing *Bradshaw v. Zoological Society*,

662 F.2d 1301, 1319 (9th Cir. 1981)).  A reasonably diligent attempt to secure counsel includes, minimally, speaking to an attorney about the merits of the case and pursuing a contingent fee arrangement. *Caston v. Sears, Roebuck & Co., Hattiesburg, Miss.*, 556 F.2d 1305, 1309 (5th Cir. 1977). Although Plaintiff has been unsuccessful in retaining new counsel after her initial attorney was disbarred, Plaintiff's second motion indicates that she has contacted several additional attorneys and explored the possibility of contingent fee arrangements with private attorneys. Mot. 3, ECF No. 38.  As such, this factor weighs in favor of the appointment of counsel.  *Cf. Buesgens v. Snow*, 169 F. App'x 869, 870 (5th Cir. 2006) (noting that this factor will weigh in a plaintiff's favor when he has made repeated attempts to secure counsel).

### 3.  Merits of Plaintiff's Claims

The last factor is the most fact-intensive to determine at this preliminary stage of the proceedings.  Plaintiff asserts the following claims in her Amended Complaint: (1) disparate treatment, (2) retaliation, (3) hostile work environment, (4) constructive discharge, and (5) disability discrimination.  *See* Am. Compl., ECF No. 39.  An evaluation of the merits of Plaintiff's claims is required because it would be unfair to "impos[e] service upon a member of the bar in a patently frivolous case." *Lee*, 882 F. Supp. at 594.  Moreover, it would be "unfair" to appoint an attorney in a case that, while not frivolous, did not appear likely to succeed.  *See Reado v. Texas General Land Office*, 929 F.Supp. 1046, 1053 (E.D. Tex. 1996).  The court in *Reado* stated, "Appointment of counsel is warranted only if Plaintiff's position seems likely to be of substance…. A plaintiff who has stated a claim but has stated scant evidence in support of that claim can expect to survive a motion to dismiss and yet fail to obtain appointment of counsel." *Id.* (citing *Smith v. City Univ. Of N.Y.*, 1993 WL 106395 at *3 (S.D.N.Y. Apr. 7, 1993)).

In its Order denying the First Motion for Counsel, this Court found that Plaintiff was unlikely to succeed on the merits of her claim considering the EEOC's prior adverse administrative rulings, and the little information provided by Plaintiff in her complaint to assess the merits of her action.  Order Den. 4–5, ECF No. 4.  The Court now considers the following factors in analyzing the merits of Plaintiff's claims: (1) EEOC's determination of Plaintiff's claims, (2) Plaintiff's amended complaint, and (2) Defendant's answer.

First, when evaluating the merits of a plaintiff's claim of discrimination for purposes of appointing counsel, a court is permitted to consider the EEOC determination.  *Caston*, 556 F.2d at 1309 ("While a district court may not give preclusive effect to the determination of the EEOC, we reject the notion that the merits of the claim may not be considered in ruling upon an application for counsel.").  Here, after the administrative judge initially found no discrimination, which the EEOC adopted, Plaintiff requested reconsideration of that decision.  Compl. 19, 39, ECF No. 1-1.  The EEOC denied the reconsideration and upheld the previous no discrimination finding.  *Id.* at 39.

Plaintiff's amended complaint does not allege additional facts explaining why this decision was incorrect.  While the EEOC decision does not indicate the outcome of the case before this Court, it does weigh against the appointment of counsel in the instant analysis. *See Caston*, 556 F.2d at 1309.

Next, the Court will examine the potential merits of each of Plaintiff's claims.

(a) Disparate Treatment

Plaintiff claims employment discrimination under Title VII. Title VII makes it unlawful "for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of

employment, because of such individual's race, color, religion, sex, or national origin…." 42 U.S.C. § 2000e-2. Claims under Title VII are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination before the case may proceed. *Id.* To establish a prima facie claim of racial, color, sex, or national origin discrimination under Title VII, Plaintiff must show that she was (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001). Allegations of unpleasant work meetings, verbal reprimands, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation under Title VII. *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008); *see Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (finding petty slights or minor annoyances that often take place at work are not actionable).[2] Plaintiff is clearly a member of a protected class, but as far as the Court can discern, Plaintiff has not stated facts alleging how CBP took an adverse employment action against her.

First, Plaintiff alleges that her supervisor's verbal reprimands rise to the level of an adverse employment action. Based on Plaintiff's Amended Complaint, she alleges that the verbal reprimands she received were "later used as written reprimands in form of memorandums [and] … made public among the force." Am. Compl. 3–4, ECF No. 39. A written reprimand

---

[2] The Fifth Circuit's recent holding in *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 504 (5th Cir. 2023) overturned the circuit's longstanding ultimate-employment-decision test for adverse action under Title VII. *Id.* at 497. However, the Fifth Circuit limited its decision, stating that "Title VII accordingly does not permit liability for de minimis workplace trifles" and reiterated that Title VII is not "a general civility code for the American workplace." *Id.* at 505. Both the *King* and *Burlington Northern* decisions analyzed the alleged adverse action under the broader material adverse action test, which the *Hamilton* court acknowledged as meritorious. *Id.*; *Burlington N.*, 548 U.S. at 68; *King*, 294 F. App'x at 85.

may be an adverse employment action when, for example, the employer makes it public or goes beyond what could reasonably be characterized as a poor performance review. *See Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000). By way of comparison, the court in *Breaux* held that while "posting results of [an] Internal Affairs investigation [of plaintiff] in the station may comport with Departmental regulations, [defendant] disseminating that information to the media went 'several steps beyond a … mere investigation'" and may constitute an adverse employment action. *Id.* at 158. The facts in the instant case are distinguishable from those in *Breaux*. *Breaux* involved the dissemination, in media outlets no less, of the findings of an internal affairs investigation into alleged violations by two police officers of departmental policies and for making purportedly false accusations. *Id.* Here, the Plaintiff alleges the internal dissemination of a personnel reprimand. Am. Compl. 3–4. Additionally, the court in *Breaux* was clearly troubled by the dissemination to the media of the defendant's internal affair investigation of the plaintiffs. The court makes a point of suggesting that the internal, nonpublic posting of the investigation might comport with that agency's regulation. *Breaux*, 205 F. 3d at 158. Here, the Plaintiff's allegations do not rise to the level of the defendant's conduct in *Breaux*. The Court concludes her allegations with regard to these written reprimands do not constitute adverse employment action.

Plaintiff also alleges in her Amended Complaint that CBP assigned her to cover two Areas of Responsibility by herself, which constituted an adverse employment action against her. Am. Compl. 3, ECF No. 39. Absent other facts, "[i]mposing a higher workload than that given to other employees is not an adverse employment action under [T]itle VII." *Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir.1998)). Indeed, a work "reassignment that requires additional

tasks" is not an adverse employment action "if it is not accompanied by any other change in the employee's status." *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 347 (5th Cir. 2016) (per curiam) (citing *Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999)). The Court notes that Plaintiff alleges in her Amended Complaint that "her responsibilities were hugely reduced, [and] she was reassigned to a degrading work …." Am. Compl. 6, ECF No. 39.   However, this allegation directly contradicts Plaintiff's previous allegation that she was assigned two Areas of Responsibility, suggesting and increased workload.  *Id.* at 3. From her own complaint, therefore, it is unclear whether she complains of an increase or decrease in responsibilities.   These conflicting allegations do not demonstrate that she suffered an adverse employment action with respect to either increased or decreased workloads.  It is simply unclear by her own words.

        Third, Plaintiff alleges that CBP's denial of some of her requests for official time to work on her EEOC administrative complaints demonstrates an adverse employment action. However, based on Plaintiffs own allegations, CBP granted Plaintiff approximately 36 total hours of administrative time paid without incurring a loss of accumulated leave ("official time") to work on her complaints.   Compl. 34–35, ECF No. 1-1.   Moreover, Defendant's Answer provides that Plaintiff's request for official time was denied because "Plaintiff failed to give the 48 hours' notice required for such request, requested 10 hours when only 8-hour requests are permitted, and did not specify an EEO case that she was working on." Answer 3–4, ECF No. 45. Under the facts alleged, Plaintiff does not show an adverse employment action by alleging that CBP denied her the right to take leave to address her EEOC complaints.

        Finally, in a disparate treatment claim, the ultimate question is "whether a defendant took the adverse employment action against a plaintiff *because of* her protected status." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013).   While Plaintiff alleges in her Amended

Complaint that "there are numerous facts showing a plausible connection between CBP adverse employment actions and the Plaintiff participation in protected activities," she has failed to allege any specific facts suggesting a causal connection.  Am. Compl. 5, ECF No. 39.  In fact, she does not allege any specific adverse employment action with respect to her disparate treatment claim. Rather, Plaintiff has made conclusory statements, such as "[o]nce Plaintiff filed her first formal discrimination case against the agency…it was hell for her in the workplace and it never stopped…." *Id.*  The Court finds Plaintiff is unlikely to succeed on the merits of her disparate treatment claim because Plaintiff's failure to plead an adverse employment action, along with her failure to allege any causal connection to any specific adverse employment action by the defendant.

(b) Retaliation

Next, the Court analyzes Plaintiff's likelihood of success on her retaliation claim.  The *McDonnell Douglas* test applied to Title VII disparate treatment cases is also applicable to Title VII unlawful retaliation cases.  *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir.1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983).  Therefore, Plaintiff must first establish a prima facie case of unlawful retaliation.  For a prima facie case of retaliation, a plaintiff must show: (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link between the protected activity and the adverse action.  *E.g., Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017).  An employee has engaged in protected activity if she has (1) opposed the employer's practice and that opposed practice must have been unlawful under Title VII, or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–28 (5th Cir. 2000) (citing 42 U.S.C. § 2000e–3(a)).

However, a vague complaint that does not reference a discriminatory practice does not constitute a protected activity. *Carter v. Target Corp.*, 541 F. App'x. 413, 418 (5th Cir. 2013).

Plaintiff claims in her Amended Complaint that CBP retaliated against her because of "her prior equal employment opportunity activity" and for serving as a testifying witness "on a peer formal discrimination case." Am. Compl. 4, ECF No. 39.  Defendant denies any allegation of retaliation and argues that Plaintiff failed to allege that CBP took an adverse employment action against her.  Answer 4-5, ECF No. 45; Reply 6-7, ECF No. 31.

        i.    *Adverse Employment Action*

An adverse employment action in a retaliation claim is not limited to the Fifth Circuit's previous "ultimate employment decision" standard for discrimination claim under Title VII. *Burlington N.*, 548 U.S. at 68.  Instead, an adverse employment action under a Title VII retaliation claim, is "one that a reasonable employee would have found to be materially adverse, which means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebone Hous. Auth. Bd. Of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (citing *Burlington N.*, 548 U.S. at 69).  This is a context-dependent, objective standard. *Id.* at 945–46.

Plaintiff's allegations include that Defendant:  (1) "attempted to take her Top Secret SCI security clearance;" (2) issued several negative memoranda in her personnel file; (3) made verbal and written reprimands that "were later public among the force;" (4) "assigned her to cover two areas of responsibly by herself;" (5) denied Plaintiff official time to participate in EEO activities; (6) "covered up a Federal Color Law violation crime by investigating allegations against [a] management official who committed the crime;" (7) forced her to retire by stating "things at work would only get worst [sic] against her;" and (8) refused to "admit her employment reaction

claim and her doctors were forced to request reasonable accommodations." *See* Am. Compl. 3–4, ECF No. 39.  As discussed above, Plaintiff's allegations that her supervisors issued written disciplinary memoranda does not rise to the level of an adverse employment action in a disparate treatment claim, nor in a retaliation claim.  Moreover, written reprimands or warnings generally are not adverse employment actions, particularly when they are issued in response to work-rule violations and do not dissuade the employee from pursuing complaints.  *See Grice v. FMC Techs., Inc.*, 216 F.App'x. 401, 407 (5th Cir. 2007) (written reprimands were not materially adverse, even if unjustified).  Disciplinary write-ups that are the basis for more serious consequences may be adverse employment actions.  *See Hernandez v. Sikorsky Support Servs., Inc.*, 495 F.App'x. 435, 438 (5th Cir.2012) (suggesting that a reprimand may be adverse if it results in changes to compensation, duties, or job title).  But without allegations that the written reprimands resulted in serious employment consequences that could have dissuaded the reasonable employee from making or supporting a charge of discrimination, an allegation of a written reprimand alone does not constitute a plausible adverse employment action. *See Id*. Clearly, here, the verbal reprimands and written memoranda alleged by Plaintiff are not enough to demonstrate an adverse employment action.

With respect to Plaintiff's allegations that CBP denied some of her requests for leave to work on EEO activities and that she was assigned additional areas of responsibility, a finding of adverse employment action is also not supported by the factual context she provides.  Plaintiff has alleged that CBP granted her over 30 hours to participate in protected EEO activity. Compl. 34–35, ECF No. 1-1.  Moreover, while an increased workload can be an adverse employment action when a plaintiff alleges a change in her "job title, grade, hours, salary, or benefits"— Plaintiff does not make such allegations here. *Stewart v. Miss. Transp. Comm'n*, 586 F. 3d 321,

332 (5th Cir. 2009). In fact, Plaintiff alleges in her Amended Complaint that her "responsibilities were hugely reduced."   Am. Compl. 6, ECF No. 39.   Without further elaboration on her contradictory allegations, Plaintiff has not stated a plausible adverse employment action.

The Court also cannot plausibly infer an adverse employment action with respect to Plaintiff's allegations that CBP: (1) attempted to take her security clearance, (6) investigated an allegation against the same management official who committed the crime, (7) upper management official made a comment saying it would get worse, and (8) refused to admit her employment emotional reaction claim until her doctors requested reasonable accommodations. As a matter of law, Plaintiff's four allegations do not rise to the level of material adversity but "instead fall into the category of 'petty slights, minor annoyances, and a simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct." *Stewart*, 586 F. 3d at 332 (citing *Burlington N.*, 548 U.S. at 68). Importantly, "the significance any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69.   Plaintiff's allegations are vague, and she makes no effort to provide evidence of circumstances that make those actions "materially adverse." *Id.*

The Court finds that Plaintiff's likelihood of success on her retaliation claim is weak because none of the alleged actions rise to the level of material adversity, nor is there an indication that Plaintiff's general employment grievances dissuaded her from making a charge of discrimination.

(c)  Hostile Work Environment

Following, the Court evaluates the likelihood of success of Plaintiff's hostile work environment claim.  A prima facie case for a hostile work environment claim requires proof that (1) a plaintiff belongs to a protected group; (2) was subjected to unwelcome harassment;  (3) the

harassment was based on the protected status; (4) "the harassment affected a term, condition, or privilege of employment;" and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (citation and internal quotation marks omitted). The alleged conduct must be objectively and subjectively hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). The totality of the employment circumstances determines whether an environment is objectively hostile. *Id.* at 23. Although no single factor is determinative, pertinent considerations are (1) "the frequency of the discriminatory conduct;" (2) "its severity;" (3) "whether it is physically threatening or humiliating, or a mere offensive utterance;" and (4) "whether it unreasonably interferes with an employee's work performance." *Id.*

Plaintiff alleges that her superiors treated her differently than her male colleagues. Sex discrimination can support a hostile work environment claim. *E.g., Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Still, the "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The circumstances alleged by Plaintiff include: (1) when a supervisor asked her, but not her male colleagues, about the failure to complete required courses; (2) when a supervisor issued her a disciplinary memorandum for a verbal altercation with a coworker, but did not ask the same of the male coworker involved in the altercation; and (3) when a supervisor issued a disciplinary memorandum and verbally counseled her, but not her male colleagues, for not signing a roster. *See* Compl. 21–24, ECF No. 1-1.

First, Plaintiff has not alleged sufficient facts to show that her harassment was frequent or pervasive. Plaintiff makes conclusory statements in her Amended Complaint stating that her allegations were "not at all infrequent nor isolated." Am. Compl. 6, ECF No. 39.  She does not, however, support these statements with any additional facts to demonstrate that they indeed occurred frequently or were pervasive.   Without more, Plaintiff has not shown that the harassment was pervasive as to alter the conditions of her employment and create an abusive working environment.  *Cf. Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (finding harassing conduct was pervasive when it was described as occurring "two or three times a week"); *West v. City of Houston, Texas*, 960 F.3d 736, 742 (5th Cir. 2020) (concluding that several incidents of sex discrimination or harassment were not sufficiently "frequent or pervasive").

Next, Plaintiff fails to allege facts that meet the second and third factors: that the alleged actions were severe, physically threatening, or humiliating.  *See Harris*, 510 U.S. at 23. Those factors "are sufficiently demanding to ensure that Title VII does not become a 'general civility code' … and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S at 778.   "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."   *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir.1991)).  Depending on the level of pervasiveness, the level of severity necessary to establish an altered work environment may be diminished.  *See Id*.  Plaintiff makes conclusory statements saying she "clearly meet[s] the five elements for [a] hostile work environment claim" and "faced harassment and humiliation by the agency."   Am. Compl. 5–6, ECF No. 39.

However, Plaintiff did not make any factual allegations that support factors two and three. Plaintiff does not allege facts for the Court to make an inference of severity based on the isolated actions of Defendant. Moreover, Plaintiff never alleges being physically threatened. Without further elaboration, Plaintiff has not shown Defendant's conduct was severe.

Finally, Plaintiff has not shown that the harassment interfered with her work performance. She pointed to no evidence that her coworkers' actions "destroy[ed]" her "opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). In fact, she did not even allege that her supervisor's actions "unreasonably interfere[d]" with her work performance. *Harris*, 510 U.S. at 23. Considering that Plaintiff has not alleged sufficient facts to show that the harassment was frequent or pervasive, nor that the Defendant's actions interfered with her work performance, Plaintiff's hostile work environment claim is not likely to succeed on the merits.

### (d)  Constructive Discharge

The Court also analyzes Plaintiff's likelihood of success on her constructive discharge claim. A constructive discharge claim requires a plaintiff to show that her "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (quotation omitted). To determine whether working conditions are sufficiently intolerable, courts consider whether the plaintiff suffered: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable that the

employee's former status. *Id.* Constructive discharge claims require an even "greater degree of harassment than that required by a hostile work environment claim." *Id.*

Plaintiff asserts that she was constructively discharged because she was "forced to resign from her employment on November 30, 2020." Am. Compl. 6, ECF No. 39.  Moreover, Plaintiff alleges in her Amended Complaint that she resigned after she was "persuaded and convinced by a management official" who told her "the workplace will be worse if she stayed." *Id.*   The Court has already assessed the Plaintiff's likelihood of success under a hostile work environment claim and indicated that the events cited in Plaintiff's allegations are too infrequent and too isolated to establish a hostile work environment.   Moreover, Plaintiff's contradictory statements in her Amended Complaint that she worked two Areas of Responsibility, but also that "her responsibilities were hugely reduced" do not provide the facts necessary to support a constructive discharge claim.  *Id.* at 3, 6.  At best, Plaintiff has made blanket allegations of harassment stating, "she was reassigned to a degrading work and faced harassment and humiliation by the agency." *Id.* at 6.   These isolated instances, even if taken as true, do not establish a constructive discharge claim because it does not support a finding that her working conditions became so intolerable that Plaintiff was encouraged to resign.

(e)  Disability Discrimination

Lastly, Plaintiff brings a disability discrimination claim against CBP under the Rehabilitation Act of 1973.  To establish disability discrimination under the Rehabilitation Act, a plaintiff must show: "(1) [she] is disabled within the meaning of the ADA, (2) [she] is qualified and able to perform the essential functions of his job, and (3) [her] employer [took an adverse employment action against her] because of [her] disability."  *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010).

Plaintiff asserts in her Amended Complaint, that she has filed an "Emotional Reaction Claim" with the Department of Labor and was "recently approved medical treatment" for an injury. Am. Compl. 7, ECF No. 39.  However, Plaintiff has alleged nothing that plausibly shows that she brought a disability discrimination claim against CBP in the administrative records she provided to the Court.  There is simply no indication that she made a disability or medical claim beyond her conclusory allegation.  Thus, Plaintiff fails to allege facts that plausibly show she raised a disability discrimination claim with the EEOC and exhausted her administrative remedies for her disability discrimination claim.  Further, Plaintiff does not allege any facts in her Amended Complaint that indicate CBP took any action against her *because of* her alleged disabilities.

In sum, while it is perhaps possible the present facts could be sufficient to survive a motion to dismiss, the Plaintiff's case does not now appear a particularly meritorious Title VII case, and the "merits of the case" factor does not weigh in favor of appointing counsel.

Considering these factors, the Court finds that Plaintiff has not met her burden of establishing a basis for appointing counsel.  Although Plaintiff adequately demonstrated her inability to retain counsel, this finding alone does not merit appointment of counsel given Plaintiff's financial ability and probability of success on the merits of her claims.  As stated, the EEOC found that there was not a preponderance of evidence demonstrating discrimination, a decision which this Court deems probative.

### IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's "Motion for Appointment of Counsel" (ECF No. 38) is **DENIED**.

**So ORDERED and SIGNED this 3rd day of January 2024.**

_____
MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE